**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**FRANCISCO MENDOZA**          *          **CIVIL ACTION**
                              *
**VERSUS**                     *          **NO. 11-3040**
                              *
**OLD REPUBLIC INSURANCE CO.**  *          **SECTION "L"(4)**


### ORDER & REASONS

Before the Court are the following motions: (1) Defendants Alan Ingersoll and

Dawn Ingersoll's Motion to Remand (R. Doc. 12), and (2) Plaintiffs Francisco Mendoza and Neri

Mendoza's, individually and on behalf of Eric Mendoza, Motion to Remand (R. Doc. 14). The

Court has received thorough briefing and supplemental briefing, as well as permitted the parties

to conduct limited discovery. The Court also heard oral arguments from the parties on two

occasions. After considering all arguments presented under the applicable law and relevant

facts, IT IS ORDERED that both motions to remand are GRANTED, remanding the case to Civil

District Court for the Parish of Orleans, State of Louisiana.

**I.      BACKGROUND**

The present matter arises from alleged personal injuries and property damage caused

by a vehicular accident. On or about November 22, 2010, plaintiffs Francisco Mendoza and Eric

Mendoza, Mr. Mendoza's minor son, were passengers in a 2004 Dodge Ram driven by defendant

Alan Ingersoll and owned by defendants Alan and Dawn Ingersoll (collectively the "Ingersolls"

or "Ingersoll Defendants"). This vehicle was traveling in the right lane on I-10 heading west,

near the I-10 High Rise Bridge over the Industrial Canal in New Orleans East, when the vehicle

experienced a mechanical/electrical problem. Due to the mechanical/electrical problems with

the Dodge Ram, the vehicle slowed and/or stopped in the right lane. Francisco Mendoza exited the vehicle and from the rear of the vehicle warned oncoming traffic to change lanes. At or about the same time, a truck owned and/or operated by defendants Ryder Integrated Logistics, Inc. and/or Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services, and driven by defendant Christopher Guarino, was traveling on the same highway and carrying goods for defendant CVS Pharmacy (collectively "Ryder" or "Ryder Defendants"). The Ryder truck then rear-ended the Ingersolls' Dodge Ram.

As a result of this collision, it is alleged that Francisco Mendoza, in attempting to jump out of the way of the Ryder truck, sustained injuries to his foot, as well as other structures of his body, and continues to suffer from headaches, nervousness and anxiety. Eric Mendoza, who was sitting in the back seat of the Dodge Ram during the collision, is alleged to have sustained injuries to his neck, shoulders, back, and other structures of his body, and suffers from headaches, dizziness, nervousness, and anxiety. Eric Mendoza was recently diagnosed with multilevel cervical herniations.

On November 7, 2011, Plaintiffs Francisco Mendoza, Neri Martinez Mendoza, and Eric Mendoza filed suit against Ryder, CVS Pharmacy, Inc., Old Republic Insurance Co., Christopher Guarino, Alan Ingersoll, and Dawn Ingersoll (collectively "Defendants") in the Civil District Court for the Parish of Orleans, State of Louisiana. *See* (R. Doc. 1-11). Plaintiffs allege Mr. Guarino was employed and/or acting within the scope of his employment with CVS and/or Ryder during the accident. They also allege that Old Republic provided insurance coverage during the accident to CVS and/or Ryder. Plaintiffs claim the Defendants are liable for negligence arising from the vehicular accident. Francisco and Eric Mendoza seek damages for

the following: past and future physical pain and suffering; past and future mental anguish; past and future medical expenses; disability; loss and impairment of life's pleasures; lost wages; and diminution of earning capacity. These plaintiffs also seek *LeJeune* damages pursuant to Louisiana Civil Code article 2315.6. Neri Martinez Mendoza seeks the following damages: mental anguish, loss of consortium, loss of support, loss of society, love of love and affection, and loss of services of her spouse.

On November 10, 2011, the Ingersolls filed an Answer, denying liability to the Plaintiffs, and a Cross-Claim against the Ryder Defendants, alleging the latter are liable to them for negligence. (R. Doc. 1-5). The Ingersolls seek the following damages in their Cross-Claim: pain and suffering; impairment and disability; brain damage; mental pain, anguish, and anxiety; medical expenses; scarring and disfigurement; loss of enjoyment of life; loss of wages/income; loss of wage earning capacity; loss of society and support; loss of love and affection; and loss of consortium.

On December 9, 2011, the "Ryder Defendants" filed a Notice of Removal in this Court. (R. Doc. 1). Thereafter, they filed answers to the Petition and Cross-Claim, denying liability and requesting trial by jury. (R. Docs. 9, 10).

Subsequently, both the Ingersoll Defendants and the Plaintiffs filed motions to remand on the basis that the Ingersolls are properly joined parties whose consent to remand is required. (R. Docs. 12, 14). The Ryder Defendants filed a response in opposition to these motions. (R. Doc. 19). The Court heard from the parties on oral argument on February 1, 2012. (R. Doc. 25). However, the Court withheld from ruling on the motions to allow the parties to conduct limited discovery on the course and scope of Francisco and Eric Mendoza's employment

relationship with the Ingersolls at the time of the accident, the issue upon which these motions hinge. The parties conducted this discovery and then filed supplemental briefing based on this discovery. *See* (R. Docs. 28, 29, 31, 33). The Court presided over a second oral argument to hear the arguments on these supplemental briefs. (R. Doc. 37). After hearing from the parties, the Court took the matter under submission. *See id.* It now issues the present Order & Reasons to resolve these motions.

## II.        ORIGINAL MOTIONS

### A.        The Ingersolls' Motion to Remand

The Ingersolls filed a Motion to Remand arguing that removal was procedurally flawed, because the Ryder Defendants failed to obtain the Ingersolls' consent to removal. (R. Doc. 12). Further, they challenge the Ryder Defendants' argument that the Ingersolls' joinder is fraudulent, because the Plaintiffs' claims against them are legitimate, and the Ryder Defendants have themselves alleged the Ingersolls are at fault for the accident.

### B.        Plaintiffs' Motion to Remand

Plaintiffs also filed a Motion to Remand, largely raising the same arguments as the Ingersolls. (R. Doc. 14). Plaintiffs argue that the removal was procedurally defective because it was done without the consent of the Ingersolls. They further argue that none of the following permits removal: (1) fraudulent joinder, (2) the Court's reclassification of the Ingersolls as plaintiffs, and (3) creation of a federal question. Plaintiffs seek reimbursement for their fees and costs incurred in bringing the present Motion.

### C.        Ryder Defendants' Response

The Ryder Defendants filed a joint Response to the present motions. (R. Doc. 19). They

argue that removal is appropriate, because it is undisputed that the Court possesses diversity subject matter jurisdiction, and the procedural defect of lack of consent from the Ingersolls is of no effect because the Ingersolls are fraudulently joined defendants whose consent is not required for removal. According to the Ryder Defendants, the Ingersolls are fraudulently joined because the Plaintiffs' claims against the Ingersolls are excluded by the Louisiana Workers' Compensation Act ("LWCA") since the facts alleged demonstrate the accident at issue occurred in the course of and scope of the Mendozas' employment with the Ingersolls. Alternatively, the Ryder Defendants ask the Court to permit limited factual discovery on the course and scope issue so that it can properly determine whether the Ingersolls are proper defendants. Finally, they oppose any imposition of costs and fees incurred by the movants in conjunction with the present motions.

## III.    SUPPLEMENTAL BRIEFING

### A.    Ingersoll Defendants

The Ingersoll Defendants submitted supplemental briefing in further support of their argument for remand of the case. (R. Doc. 29). Based upon the limited discovery conducted, they argue that Francisco and Eric Mendoza and Alan Ingersoll were all outside of the course and scope of employment with Bobby Leonard Sheet Metal, these parties' employer at the time, when the accident occurred. They further claim there exists no evidence of Bobby Leonard Sheet Metal concerning itself with its employees' transportation to and from work. The Ingersolls allege that the deposition of Dawn Ingersoll demonstrates that the general custom or practice in the roofing industry in which the Mendozas and Mr. Ingersoll worked is that employees are paid by the day, beginning when they show up for work and begin working, not

when they drive to the site. Also, the Ingersolls allege that no employment agreement existed, no reimbursement of fuel costs or mileage was provided, and wages were not paid for travel time. Finally, they claim that Mr. Ingersoll only provided transportation to Mr. Mendoza and his son out of an arrangement of accommodation, as it was on his own way to work, and it was not frequent or a pattern for him to do so.

### B. Ryder Defendants

The Ryder Defendants also filed supplemental briefing in further support of their removal of the case to this Court. (R. Doc. 31). They first argue that Francisco and Eric Mendoza were employees of the Ingersolls who were in the course and scope of their employment at the time of the accident based upon the following: Mr. Mendoza had worked with the Ingersolls for over a year prior to the accident; the Ingersolls contacted Mr. Mendoza directly to hire him for jobs; the Ingersolls paid Mr. Mendoza on a per job basis upon completion, in cash; Mr. Mendoza brought his son Eric to job sites to learn the roofing trade, and Eric assisted in the work; the Ingersolls exercised control over and directed Mr. Mendoza with regard to his work; Mr. Ingersoll would regularly pick-up Mr. Mendoza to travel to job sites; on the day of the accident, Mr. Ingersoll made arrangements with Mr. Mendoza to work on the job and to pick him up; the job was done for Bobby Leonard Sheet Metal for whom the Ingersolls' company had done work previously; and there is no evidence that Bobby Leonard Sheet Metal contacted the Mendozas directly for employment.

Second, the Ryder Defendants argue that is no legal distinction between DKI Construction and the individuals Alan and Dawn Ingersoll, and thus, when the Ingersolls hired the Mendozas, they also did so through their trade name, DKI Construction.

Third, the Ryder Defendants argue that the Mendozas have no valid claim against the Ingersolls, because the Mendozas were in the course and scope of their employment with the Ingersolls at the time of the accident, triggering the Louisiana Workers' Compensation Act ("LWCA") which bars tort claims.

Fourth, the Ryder Defendants argue that Court should realign the parties based on their true interests; that is, the Mendozas and the Ingersolls should be aligned as plaintiffs against the Ryder Defendants, eliminating the need for the Ingersolls' consent to removal.

### C.      Plaintiffs' Supplemental Briefing

The Plaintiffs also filed supplemental briefing in further support of their arguments for remand of the case to state court.  (R. Doc. 33).  Plaintiffs reiterate their prior arguments against removal that the removal was procedurally defective because the Ingersoll Defendants did not consent to removal and the LWCA does not apply to bar tort claims of Plaintiffs against the Ingersoll Defendants.  Plaintiffs next argue that the LWCA does not provide the exclusive remedy for Plaintiffs against the Ingersolls because Eric Mendoza was never an employee of DKI Construction or the Ingersolls since he is a 14-year old boy who was accompanying his father to work on the day of the accident.  Additionally, Plaintiffs argue that Mr. Mendoza was not an employee of DKI Construction or the Ingersolls because both Mr. Mendoza and Mr. Ingersoll were scheduled to work for another roofer on the day of the accident, placing them in the position of co-employees.  Finally, Plaintiffs argue that the exceptions to the coming-and-going rule do not apply here, because Mr. Ingersoll only offered a ride to Mr. Mendoza in this instance as a result of Mr. Mendoza's car being broken down and Mr. Mendoza was not reimbursed for his gas or mileage in bringing Mr. Mendoza to work.

## IV.    LAW & ANALYSIS

### A.    Removal & Remand

28 U.S.C. 1447(c) provides two grounds for remand, (1) a defect in removal procedure, and (2) lack of subject matter jurisdiction. In the present matter, only the former is at issue, as the parties agree there exists subject matter jurisdiction under 28 U.S.C. § 1332.

When considering a motion to remand, the removing party bears the burden of showing that removal was proper. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988), *appeal after remand*, 915 F.2d 965 (5th Cir. 1990), *aff'd*, 503 U.S. 131 (1992). This burden extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the procedural requirements of the removal statute. *See Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir. 2000); *Brigham v. Pennywise RV Sales & Servs., Inc.*, 2005 WL 435260, at *2 (W.D. La. Feb. 16, 2005)(citing *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). Because removal jurisdiction "raises significant federalism concerns," *Willy*, 855 F.2d at 1164, courts must construe removal statutes "narrowly, with doubts resolved in favor of remand to the state court." *Jefferson Parish Hosp. Dist. No. 2 v. Harvey*, 788 F.Supp. 282, 283-84 (E.D. La. 1992). If there is any doubt that a right to removal exists, ambiguities are to be construed against removal. *Transitional Hosps. Corp. of La., Inc. v. Am. Postal Workers Union Health Plan*, 2010 WL 187388, at *2 (E.D. La. Jan. 13, 2010)(citing *Acuna,* 200 F.3d at 335)).

### B.    Lack of Consent for Removal

The movants' basis for remand is that the Ingersolls Defendants, co-defendants with the Ryder Defendants, did not and will not consent to removal. The Ryder Defendants acknowledge that generally consent of all defendants is required. *See* (R. Doc. 1).

-8-

"The procedure for removal, as provided in 28 U.S.C. § 1446, requires that 'a defendant or defendants desiring to remove any civil action...shall filed a notice of removal.'" *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir. 1992). "The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires that all defendants join in the removal petition." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman & Assistants' Local 349*, 427 F.2d 325 (5th Cir. 1970)(citing *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245 (1900)). Thus, because the Ingersolls have not consented to removal, there exists a procedural defect and remand is proper unless the matter falls into the "narrow exceptions" to this rule. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, n.9 1262 (5th Cir. 1988). The Ryder Defendants argue that the narrow exception of fraudulent joinder applies, rendering their removal proper.

### C.     Fraudulent Joinder

The Ryder Defendants argue that because the Ingersoll Defendants constitute fraudulently joined defendants, the Ingersolls' consent is not required for removal. The movants disagree, claiming the Ingersolls are proper defendants in the matter whose consent is critical for removal.

"In cases involving alleged improper or fraudulent joinder of parties,...application of the [consent to removal] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists." *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *accord Rico v. Flores,* 481 F.3d 234, 239 (5th Cir. 2007); *Tri-Cities Newspapers*, 427 F.2d at 327. "Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2)

inability of the plaintiff to establish a cause of action against the non-diverse[1] party in state

court."  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003); *accord Jernigan*, 989 F.2d at 815.  "In

determining whether the joinder of parties was fraudulent, the district court 'must evaluate all of

the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of

substantive fact in favor of plaintiff.'"  *Jernigan*, 989 F.2d at 815-16.  "If there is 'arguably a

reasonable basis for predicting that the state law might impose liability on the facts involved,'

then there is no fraudulent joinder."  *Id*. at 816.

Here, the Plaintiffs allege Francisco and Eric Mendoza were guest passengers in a vehicle

driven by Alan Ingersoll and owned by the Ingersolls when the accident occurred.  (R. Doc. 1-

11).  Plaintiffs allege negligence on the part of the Ingersolls for failure to provide and/or ensure

the vehicle had proper and routine mechanical/electrical maintenance; failure to correctly do

electrical and/or mechanical maintenance on the vehicle; and failure to ensure that the vehicle

was in good condition before getting on the road.  *Id.*  Louisiana law provides a right of action

for guest passengers against the driver of vehicle when that driver's negligence causes his guest

passengers injuries.  *See Smith v. Travelers Ins. Co.*, 430 So. 2d 55, 58 (La. 1983).  Thus, at first

blush it appears settled that Plaintiffs have a reasonable basis for their claims against the

Ingersolls, rendering the Ingersolls proper defendants.

However, the Ryder Defendants claim that Francisco and Eric Mendoza were not mere

guest passengers, but rather employees of the Ingersolls and traveling in the course of scope of

their employment with the Ingersolls when the incident occurred.  Accordingly, the Ryder

---

[1]The parties do not dispute that the Ingersolls constitute diverse parties as they are
residents of Mississippi; thus, the dispute here is not jurisdictional but rather procedural.

Defendants argue that the Plaintiffs cannot sustain their claims against the Ingersolls because these claims are barred by the exclusivity provisions of the Louisiana Workers' Compensation Act ("LWCA").  *See id.*  Thus, the Court must determine whether Francisco and Eric Mendoza were in the course and scope of their employment at the time of the accident, which if true, would bar Plaintiffs' tort claims under the guest passenger statute against the Ingersolls and render the Ingersolls fraudulently joined parties whose consent for removal is unnecessary.

### D.        Course & Scope of Employment

The LWCA provides the exclusive remedy for employees with tort claims against their employers.  *See* La. Rev. Stat. § 23:1032(A).  However, under this Act, "employers are responsible for compensation benefits to employees only when the injury results from an accident 'arising out of and in the course of his employment.'"  *McLin v. Industrial Specialty Contractors, Inc*., 2002-1539, p.4 (La. 7/2/03); 851 So. 2d 1135, 1140 (quoting La. Rev. Stat. § 23:1031); *Orgeron v. McDonald*, 93-1353 (La. 7/5/94); 639 So. 2d 224, 226-27.  The Ryder Defendants allege that Francisco and Eric Mendoza were in the course and scope of their employment with the Ingersolls while traveling to the work site in the Ingersolls' truck at the time of the accident.

"Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course and scope of his employment, and thus are not compensable under the Workers' Compensation Act."  *McLin*, 2002-1539 at p. 4; 851 So. 2d at 1140; *Orgeron*, 93-1353; 639 So. 2d at 227.  "This rule, often called by 'going-and-coming rule,' is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resume his work."  *McLin*, 2002-1539, at

p.4.  Whether an employee is in the course and scope of his work at the time of injuries is a factual issue.  *White v. St. Paul Fire & Marine Ins. Co.*, 96-220, p.5 (La. App. 5 Cir. 11/26/96); 685 So. 2d 335, 337.  "[A]n employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination." *Ogeron*, 93-1353; 639 So. 2d at 227.

However, there are exceptions to the "coming-and-going rule."  *See McLin*, 2002-1539, at p. 6, n.1; 851 So. 2d at 1141, n.1.  Based upon the Ryder Defendants' use of boldface in their brief, it appears they raise the following three exceptions: (1) if the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to this employer's order; (2) if the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses; and (3) if the employee was hurt while traveling to and from one work site to another.  *Id.*  In determining whether one of these exceptions is applicable, the following should be considered:

> Whatever the manner in which the employer might have interested himself in the transportation of the employee, the transportation must be an incident of the contract of hiring.  The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment.  This distinction between transportation furnished as an occasional convenience and transportation supplied as a part of the employer's undertaking has given rise to much confusion.  In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances.  *Pruitt v. Brinker, Inc.*, 2004-0152. p.7 (La. App. 1 Cir. 2/11/05); 899 So. 2d 46, 52 (quoting *Seay v. Wilson*, 569 So. 2d 227, 232-33 (La. App. 1 Cir. 1991)).

Additionally, "[w]hen the employer provides some type of transportation to the employee, the

question is whether the employee has furnished transportation as an incident to employment, either through a vehicle or payment of expenses or where wages are paid for the time spent in traveling." *White v. St. Paul Fire & Marine Ins. Co.*, 96-220, p.5 (La. App. 5 Cir. 11/26/96); 685 So. 2d 335, 338.

The following jurisprudence provides further guidance on the coming-and-going rule and its exception where injuries are sustained by employees while traveling to work. In *Maynard v. Hatfield*, 2010-162 (La. App. 3 Cir. 6/2/10); 40 So. 3d 1162, the court reversed a summary judgment finding that plaintiff was in the course and scope of his employment during injuries sustained while riding in his employer's vehicle, driven by his supervisor. The court noted the distinction between using a company vehicle as the result of a gratuitous offer by the employer, which is outside of the course and scope of employment, and using a company vehicle as an incident of employment, which is within the course and scope and an exception to the coming-and-going rule. *See id.* In reviewing the jurisprudence on these issues, the court observed that injuries are outside the course and scope of employment where: transportation is not provided as part of the employment contract, employees are not required to ride in company vehicles, and the transportation is gratuitously offered by the employer. *See id.* at 1165. In finding genuine issues of material fact existed, the court cited the following facts: the employer provided plaintiff's supervisor with a vehicle for commuting to job sites; use of this vehicle was a gratuity; plaintiff was not paid wages for his commute; plaintiff was not providing services to his employer during the commute; the employer requested plaintiff ride with his supervisor to job sites to cut down on vehicle space at the sites; plaintiff had the option of using his own vehicle to get to jobs sites; and the supervisor was not told he had to provide plaintiff transportation to the job sites. *Id.*

In *Pruitt v. Brinker, Inc.*, 2004-0152. (La. App. 1 Cir. 2/11/05); 899 So. 2d 46, the court addressed the similar issue of whether personal injuries sustained during a commute to work provided by a manager to a subordinate employee were governed by the "coming-and-going rule." In finding this rule was triggered the court observed,

> According to the record, managers for Chili's, such as Mr. Ledet, performed ninety-five percent of their work inside the restaurant. Managers were not provided with a company vehicle and were never reimbursed for any expenses associated with the use of their personal vehicle. Although there were instances when a manager would transport a subordinate employee either to or from work, the managers were under no such obligation and were neither compensated for same nor reprimanded or penalized if they refused to do so. It was strictly a personal decision made by the individual managers as to whether they would offer a ride to a fellow employee in need. This evidence was not sufficient to show that this practice of transporting subordinate employees to and from work was anything more than an arrangement of 'accommodation only.' *Id.* at 52-53.

In *Reed v. Arthur*, 556 So. 2d 937, 942 (La. App. 3 Cir. 1990), the court also found injuries were sustained outside the course and scope of employment where an employee was injured while being transported to the job site by a co-employee in the employer's vehicle. The court reasoned that plaintiff had never been reimbursed for travel expenses by the employer, plaintiff had provided his own transportation to work in the past, there existed no employment agreement concerning transportation, and the co-employee testified that he provided the plaintiff the ride to work as a courtesy and out of friendship. *Id.* The court distinguished the case from one in which the employer provided daily transportation to the employee over a 12-week period, constituting course and scope of employment. *See id.*; *see also Robert v. LeCompte*, 2002-569 (La. App. 3 Cir. 10/30/02); 829 So. 2d 1200 (finding injuries sustained in course and scope where employer directed employee to transport plaintiff, co-employee to work each day in an employer-owned vehicle).

However, a different conclusion was reached in *Jackson v. Long*, 289 So. 2d 205 (La.

App. 4 Cir. 1974).  Therein, the Court found that a temporary employee who was injured while traveling to a job site at the direction of his employer was in the course and scope of employment.  *Id.*  In reaching this decision, the court noted the facts did "not involve the ordinary employment situation," but rather involved the employer's furnishing of laborers to job sites selected by customers and in which the employer did not receive payment unless the laborer reached the job site and performed the contracted-for labor.  *Id*. at 208.

In the present matter, the Petition omits any reference to an employer-employee relationship between the Mendozas and the Ingersolls, and instead alleges that the Mendozas were merely "guest passengers" in a vehicle owned by the Ingersolls and driven by Alan Ingersoll, at the time of the accident.  *See* (R. Doc. 1-11).  However, the affidavits submitted by the Ingersolls suggest that at the time of the accident, Francisco and Eric Mendoza and Alan Ingersoll were involved in an ambiguous employment-related relationship.  *See* (R. Docs. 12-2, 12-3).  For example, Alan Ingersoll's affidavit provides that at the time of the accident, he and Francisco and Eric Mendoza "were simply traveling to work from home" and "had not arrived at our place of employment."  (R. Doc. 12-2).  Mr. Ingersoll's affidavit also states that neither him nor the Mendozas were "paid for travel to and from the job site."  *Id.*  He states that his driving the Mendozas "to the job site was done gratuitously and was in no way required by any employment agreement in effect at that time," and the Mendozas were "free to choose an alternate method of travel to the job site."  *Id.*  Finally, Mr. Ingersoll claims that Dawn Ingersoll is not he or the Mendozas' employer.  *Id*.

At the first hearing on the motions, the Court determined, based upon the limited information in the Petition and Alan Ingersoll's affidavit, that there remained factual issues to be

resolved and ordered limited discovery on course and scope of employment. *See e.g. White v. St. Paul Fire & Marine Ins. Co.*, 96-220 (La. App. 5 Cir. 11/26/96); 685 So. 2d 335, 337 (citing *Smith v. Lewis*, 499 So. 2d 1350, 1352 (La. App. 5 Cir. 1986)). Now that this limited discovery has been conducted and the supplemental briefing submitted, the Court has a more developed record before it to consider in ruling on the present motions. The Court has learned the following from the limited discovery:

DKI Construction is a business that specializes shingle roof and vinyl siding work and labor. Dep. Alan Ingersoll 11:16-17 (Mar. 20, 2012). It does not have any employees other than Alan and Dawn Ingersoll. *Id*. at 11:18-23. However, when DKI Construction is retained for a large job, it will hire extra workers to assist. *Id*. at 12:2-12.

Mr. Ingersoll has previously worked with Mr. Mendoza. Dep. A. Ingersoll at 36:18-19; Dep. D. Ingersoll 70:12-15. Mr. Mendoza has worked for DKI Construction on-and-off since September 2009, depending upon the work load. Dep. A. Ingersoll at 36:22-23, 37:6-8; Dep. D. Ingersoll 10:4-13. When Mr. Mendoza has worked for DKI Construction, he was under the supervision of DKI and the Ingersolls. Dep. D. Ingersoll 21:20-25. When Mr. Mendoza has worked for DKI Construction, he was paid with cash based upon the amount work completed at the end of the job. Dep. D. Ingersoll 9:12-14; 11:23-12:10; 14:4-8. Mr. Mendoza sometimes had his own car to get to work sites or he would catch a ride or take the bus, but when these options were not available, he would get rides from Mr. Ingersoll. Dep. A. Ingersoll at 36:20-21; Dep. D. Ingersoll 70:16-71:1.

On the days leading up to and the day of the accident at issue, Mr. Ingersoll has little recollection of the events. Dep. A. Ingersoll 19:11-23. Before the accident occurred, Mr.

Ingersoll was helping his friend Bobby Leonard of Bobby Leonard Sheet Metal, with a metal roof job in Belle Chasse, Louisiana. *Id.* at 20:9-21:16, 30:13-15; Dep. D. Ingersoll 31:8-10. DKI Construction was not involved in Mr. Leonard's metal roof work, only Mr. Ingersoll on his own. Dep. A. Ingersoll at 21: 22-25; Dep. D. Ingersoll 25:6-16; 69; 10-20. Mr. Ingersoll did not use his own equipment while working for Mr. Leonard, but did bring his own tool bag. Dep. A. Ingersoll at 30:16-18, 32:12-14; Dep. D. Ingersoll 39:8-10. Mr. Ingersoll considered himself an employee of Mr. Leonard while working the metal roofing job and considered Mr. Leonard the supervisor of the job. Dep. A. Ingersoll at 30:24-31:1, 31:7-9, 34:3-4. Mr. Leonard paid Mr. Ingersoll $100 per day for his work. *Id.* at 31:4-6, 32:7-11. Mr. Ingersoll's work day on this job began once he reached the job site. *Id.* at 31:23-25; Dep. D. Ingersoll 68:21-23.

On Saturday, November 20, 2010, while Mr. Ingersoll was working for Mr. Leonard, Mr. Leonard asked Mr. Ingersoll if he knew of anyone else who could assist with the work. *Id.* at 24:24-25:7; Dep. D. Ingersoll 31:8-14. Because the Ingersolls had worked with Mr. Mendoza previously, Mr. Ingersoll told Mr. Leonard he would call Mr. Mendoza about working on the metal roofing job. Dep. D. Ingersoll 31:10-17; 70:11-15. Mr. Ingersoll called Mr. Mendoza on Sunday and asked Mr. Mendoza to work as a helper to finish Mr. Leonard's metal roofing job. *Id.* at 32:3-18. Additionally, Mr. Ingersoll asked Mr. Mendoza if he needed a ride to the work site. *Id.* at 32:19-25. Mr. Ingersoll agreed to pick-up Mr. Mendoza on the way to the job site the next morning. *Id.* at 32:21-24.

On the day of the accident, Mr. Ingersoll picked up Mr. Mendoza and Mr. Mendoza's son, Eric, in a Dodge Ram pickup truck which was registered in the name of Mrs. Ingersoll and was used by the Ingersolls for both business and personal use. Dep. D. Ingersoll 56 56:2-17.

Mr. Ingersoll did not have any supervision responsibilities over the Mendozas for Mr. Leonard's metal roofing job. Dep. A. Ingersoll at 34:5-7. Rather, Mr. Ingersoll considered the Mendozas to be his co-employees for the job. *Id*. at 34:8-12. Mr. Ingersoll and Mr. Mendoza were to be paid for their work only upon completion of the job, based on the number of days worked. Dep. D. Ingersoll 34:11-14. Mr. Ingersoll was not offered and did not receive any reimbursement from Mr. Leonard for taking Mr. Mendoza to work. *Id*. at 16-24; Dep. D. Ingersoll 69:5-9. Ultimately, Mr. Ingersoll and Mr. Mendoza were not paid for their work by Mr. Leonard because they never reached the job site or completed any work due to the accident. Dep. D. Ingersoll 57:3-9; 69:5-9; 71:9-11.

Since June 2010, on occasion, Mr. Mendoza has brought his son Eric Mendoza to DKI construction sites to teach him how to do roofing work. Dep. A. Ingersoll at 37:11-13, 19-21, 48:2-4, 12-15; Dep. D. Ingersoll 19:11-25; 67:21-23. DKI Construction has never hired Eric Mendoza for work. Dep. A. Ingersoll at 37:9-11. Eric was approximately 15 years-old at the time of the accident and was enrolled in school. Dep. A. Ingersoll at 48:5-6; Dep. D. Ingersoll 20:1-3; 57:24-68:1. When Mr. Mendoza brought Eric to DKI Construction jobs, Eric was not under the supervision of DKI, only Mr. Mendoza, though DKI could tell Mr. Mendoza when Eric was doing something wrong and Mr. Mendoza would relay the message to Eric and DKI had authority to decide whether Eric could be at the site or not. Dep. A. Ingersoll at 37:22-25, 38:1-4, 18-21; Dep. D. Ingersoll 30:17-24. When Mr. Mendoza brought Eric to work with him on DKI sites, Mr. Mendoza paid his son, not DKI. Dep. A. Ingersoll at 37:12, 48:16-20; Dep. D. Ingersoll 68:2-3.

Based upon the foregoing evidence and for purpose of remand, the Court finds that

Francisco and Eric Mendoza were not in the course and scope of their employment with the Ingersolls or Bobby Leonard Sheet Metal at the time of the accident. There is sufficient evidence to allow the Plaintiffs, under the going-and-coming rule, to pursue their claims against the Ingersolls in tort. Accordingly, the Ingersolls are not fraudulently joined and the failure to obtain their consent for removal is a fatal procedural defect requiring remand of the case to state court. The Court notes the following evidence in support of its conclusion that the going-and-coming rule applies: (1) Francisco Mendoza was not employed by the Ingersolls at the time of the accident, but rather was a co-employee of Alan Ingersoll for their employer at the time, Bobby Leonard Sheet Metal, on a roofing job in Belle Chasse, Louisiana; (2) Eric Mendoza, a minor student, did not constitute an employee of Bobby Leonard Sheet Metal or the Ingersolls at the time of the accident; (3) Bobby Leonard Sheet Metal did not ask or direct Mr. Ingersoll to provide the Mendozas with transportation to the work site; (4) the drive to the work site was not part of a specific mission for Bobby Leonard Sheet Metal; (5) Mr. Ingersoll was not offered or given compensation or reimbursement by Bobby Leonard Sheet Metal for providing transportation to the Mendozas; (6) Mr. Ingersoll was not using Bobby Leonard Sheet Mental's company vehicle to transport the Mendozas; (7) Mr. Ingersoll and the Mendozas were traveling from their homes to the work site, not from one work site to another; (8) Mr. Ingersoll only provided transportation to the Mendozas for the Bobby Leonard Sheet Metal job on this one occasion and for DKI Construction jobs only occasionally. Further, this decision is consistent with the high burden placed on the removing party to demonstrate removal is proper; the Ryder Defendants have not satisfied this burden.

### E.     Party Realignment

Alternatively, the Ryder Defendants ask the Court to realign the Ingersolls to their proper role as co-plaintiffs with the Plaintiffs, which would vitiate the need for the Ingersolls' consent to removal. (R. Doc. 1).

The Ryder Defendants cite *City of Indianapolis v. Chase National Bank of City of New York*, 314 U.S. 63, 69 (1941) for the premise that it is the duty of the court "to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" In determining whether to realign parties, a court is to consider whether there exists an "actual, substantial" controversy between the contested parties, as well as the "principal purpose of the suit" and the "primary and controlling mater in dispute." *Id*. In interpreting *City of Indianapolis*, the Fifth Circuit has provided, "[t]he objective of *City of Indianapolis* realignment is only to insure that there is a bona fide dispute between citizens of different states. The determination of the 'primary and controlling matter in dispute' does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing its suit." *Zurn Indus., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234, 236 (5th Cir. 1988).

Here, Plaintiffs' primary purpose for filing suit is to recover damages for injuries sustained after the Ingersolls' truck broke down and the Ryder Defendants' truck collided with the Ingersolls' truck. As discussed above, whether the Plaintiffs have viable claims against the Ingersolls in tort entirely depends upon whether their injuries were sustained in the course and scope of employment. If the injuries were sustained in the course and scope of employment, Plaintiffs may only proceed against the Ingersolls under the LWCA, requiring dismissal of such claims and eliminating the need for the Ingersolls' consent to removal, but if the injuries were sustained outside of course and scope, as this Court has determined for the purpose of remand,

Plaintiffs may proceed in tort against the Ingersolls and their refusal to consent to removal renders the removal procedural defect and subject to remand.  Thus, the Court finds that realignment is not a separate issue from fraudulent joinder and is not appropriate here because there is sufficient evidence to allow Plaintiffs to pursue their claims against the Ingersolls in tort.

### F.    Costs

Plaintiffs request reimbursement for their costs and fees incurred in bringing their motion.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. The Court finds that the payment of just costs and expenses incurred as a result of the removal is not appropriate here.  Removal was not done in bad faith or to harass, and as evidenced by the fact that the Court required discovery on the remand issue herein, the removal was not entirely baseless at the time it was filed.

## V.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the motions to remand (R. Docs. 12, 14), are GRANTED, remanding the case to Civil District Court for the Parish of Orleans, State of Louisiana.


New Orleans, Louisiana this 6th day of June 2012.

_____
U.S. District Judge