UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRANCISCO MENDOZA, ET AL** | **CRIMINAL ACTION** |
| **VERSUS** | **NO:   11-3040** |
| | **c/w 16-17743** |
| **OLD REPUBLIC INSURANCE COMPANY, ET AL** | **SECTION: "L" (4)** |

**ORDER AND REASONS**

Before the Court is **Motion to Quash and Motion for Protective Order (R. Doc. 45)** filed by Defendants, Ryder Integrated Logistics, Inc., Ryder Truck Rental, Inc., Ryder Transportation Services, Inc., Christopher Guarino, CVS Pharmacy, Inc., and Old Republic Insurance Company ("Ryder Defendants") seeking an order from the Court to quash a subpoena issued to Mitchell Sanchez, LLC by Cross Claimants Alan Ingersoll and Dawn Ingersoll ("Ingersolls"). The motion is opposed. R. Doc. 48. The motion was submitted on February 8, 2017 and heard with argument on February 15, 2017.

**I.     Background**

This action was initially removed from the Civil District Court of Orleans Parish on December 9, 2011. R. Doc. 1. The original Plaintiffs Francisco Mendoza and Neri Mendoza on behalf of Eric Mendoza ("Mendozas") alleged that on or about November 22, 2010, Francisco Mendoza and Eric Mendoza were passengers in a Dodge Ram driven by Defendant Alan Ingersoll and owned by Defendants Alan and Dawn Ingersoll ("Ingersolls"). After experiencing mechanical issues, the vehicle stopped and/or slowed in the right lane of Interstate 10. At that same time, a truck owned by Defendant Ryder Truck Rentals, driven by Defendant Christopher Guarino, and carrying goods for CVS Pharmacy was also travelling down that highway. The Ryder Defendants truck eventually rear-ended the Dodge Ram, allegedly causing injuries to Francisco Mendoza as

1

he dove out of the way of the truck and to Eric Mendoza, who was seated in the back seat of the Dodge ram. The Mendozas filed suit against the Ryder Defendants and the Ingersolls, alleging that both parties were seperately liable to the Mendozas as a result of their separate acts of negligence. R. Doc. 1-2, p. 3-5.

While the matter was still in state court prior to removal, the Ingersolls filed a cross-claim against the Ryder Defendants for damages for pain and suffering; impairment and disability; brain damage; mental pain, anguish, and anxiety; medical expenses; scarring and disfigurement; loss of enjoyment of life; loss of wages/income; loss of wage earning capacity; loss of society and support; loss of love and affection; and loss of consortium. R. Doc. 1-5, p. 10.

On June 6, 2012, the District Court remanded the case back to state court because the Ingersolls as Defendants had not consented to removal. R. Doc. 38. Moreover, the Court found that the Ingersolls should not be realigned as plaintiffs and that there was no fraudulent joinder because the Mendozas had a valid claim against the Ingersolls. *Id.*

On December 22, 2016, the Ryder Defendants again filed a notice of removal, removing the action from the Civil District Court for the Parish of Orleans. *Mendoza et al v. Old Republic Insurance Company et al*, No. 16-17743, R. Doc. 1. The Ryder Defendants filed the removal after the dismissal by Mendozas of all claims against all defendants. *Mendoza et al v. Old Republic Insurance Company et al*, No. 16-17743, R. Doc. 1-11. The Mendozas dismissed all their claims including the claims against the Ingersolls following a settlement agreement with just the Ryder Defendants. R. Doc. 45-2, p. 2.

After that dismissal, the Ingersolls cross-claims against the Ryder Defendants were the only remaining claims. *Mendoza et al v. Old Republic Insurance Company et al*, No. 16-17743,

R. Doc. 1-4, p. 4-11. The second removal, No. 16-17743, was consolidated with the instant case, No. 11-3040, on January 25, 2017. R. Doc. 39.

On February 6, 2017, the Ryder Defendants filed the instant motion to quash and motion for protective order (R. Doc. 45) as well as a motion to expedite (R. Doc. 46). On February 1, 2017, the Ingersolls issued a subpoena *duces tecum* to Mitchell Sanchez, LLC—the Mendozas' attorneys—seeking the production of:

> Any and all correspondence, memoranda, releases, settlement agreements, documents, materials, electronic mails, or any other tangible items, whether stored electronically or otherwise, pertaining to the settlement of your clients, Francsico Medoza [*sic*] and Neri Mendoza on behalf of Eric Mendoza, referenced in the above captioned case.

R. Doc. 45-3, p. 3. The Ryder Defendants seek an order quashing the subpoena and for a protective order surrounding the material at issue in the subpoena, arguing in part that: (i) proper service was not made; (ii) the materials are privileged and confidential under Louisiana Law; and (iii) that the requested material is not relevant or proportional to the needs of this case. R. Doc. 45-2, p. 3-8.

Given that the subpoena had a return date of February 7, 2017, the Court granted the Ryder Defendants' motion to expedite and set the submission date for February 8, 2017, allowing time for the Ingersolls to file an opposition to the motion. R. Doc. 47.  On February 9, 2017, the Court determined that oral argument would facilitate a decision in this case and set oral arguments for February 15, 2017.

The Ingersolls have opposed the motion to quash and for protective order. R. Doc. 49. In response and during oral argument, the Ingersolls argued that the subpoena sought relevant material. In particular, the Ingersolls argue that at best it was odd and at worst fraudulent that the Mendozas would voluntarily dismiss their claims against the Ingersolls. The Ingersolls aver that

3

the Ryder Defendants may have used the private mediation between themselves and the Mendozas in order to provide compensation or otherwise influence the Mendozas to dismiss their claims against the Ingersolls. By so doing, the Ingersolls argue that the Ryder Defendants are now attempting to use the Mendozas' dismissal of claims against the Ingersolls in their removal argument to demonstrate that the Ingersolls were improperly aligned as Defendants or fraudulently joined because that is the only argument for removal under 28 U.S.C. § 1446 given that this case was remanded and at the state court for close to five years. The Ingersolls believe that any evidence that the Ryder Defendants may have used mediation to manufacture this posture is both discoverable and relevant.

Moreover, the Ingersolls argue that the Defendants lack standing to challenge the subpoena; that Louisiana law nor federal law restrict disclosure of communications not made *during* the actual mediation; that the Defendants have not met the good cause standard for a protective order; and that the settlement agreement is relevant and discoverable. *Id.*

## II.   Standard of Review

Federal Rule of Civil Procedure 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The Court may also modify or quash a subpoena that requires the disclosure of a trade secret or an unretained expert's opinion that does not describe specific occurrences in dispute and results from that expert's study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

Subpoenas under Rule 45 may be served upon both party and non-parties. *Petit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. Mar. 21, 2016). However, in order to challenge the subpoena, the movant must: be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See, Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May, 2, 2014).

"Both Rules 45 and 26 authorize the court to modify a subpoena *duces tecum* when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) (Wilkinson, C.M.J.). Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).

Rule 26(c) governs the issuances of Protective Orders in discovery. A Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule offers a variety of potential options that the Court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential commercial information not be revealed or be revealed in only a certain way. Fed. R. Civ. P. 26(c)(1)(D), (G). "The party seeking the protective order bears the burden to show 'the necessity of its issuance, which contemplates a particular and specific demonstration of fact[.]'" *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998)). The trial court enjoys wide discretion in setting the parameters of a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). Finally, Rule 26(c)(1) requires a certification that the moving party has conferred or attempted to confer in good faith with the other affected party to attempt to resolve the issue without the court's interference.

**III.    Analysis**

The Ryder Defendants have filed the instant motion to quash and motion for protective order seeking an order from the Court quashing the Ingersolls' subpoena issued to Mitchell Sanchez, LLC. R. Doc. 45. The subpoena at issue seeks a host of documents that might exist in connection with any settlement agreement/mediation between the Mendozas and the Ryder Defendants. R. Doc. 45-3. The Ryder Defendants object to the subpoena because (i) proper service was not made; (ii) the materials are privileged and confidential under Louisiana Law; and (iii) that the requested material is not relevant or proportional to the needs of this case. R. Doc. 45-2, p. 3-

6

8. The Ingersolls argue that the Defendants lack standing to challenge the subpoena; that Louisiana law nor federal law restrict disclosure of communications not made *during* the actual mediation; that the Defendants have not met the good cause standard for a protective order; and that the settlement agreement is relevant and discoverable. *Id.*

> First, as it relates to standing:
>
> Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases.

Charles Alan Wright & Arthur R. Miller, 9A *Federal Practice and Procedure Civil 3d* § 2459 at 435–36 (3d ed.2008); *accord Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979); *See Winter v. Bisso Marine Co., Inc.*, No. 13-5191, 2014 WL 3778833, at *2 (E.D. La. July 29, 2014). Here, given that the subpoena seeks discussions concerning the settlement agreement between the Mendozas *and* the Defendants, the Defendants clearly have a sufficient interest to challenge the subpoena.

Second, turning to the Defendants' service arguments, the Ryder Defendants acknowledged during oral argument that the Mendozas' attorneys had been properly served at the time of oral argument such that the service issue was now moot.

Third, the Defendants also argue that the original subpoena required production within seven days of issuance. Usually, such a short period of time would be unreasonable and might require the quashing of the subpoena. 45(3)(A)(i) *Biological Process of Alabama, Inc.*, No. 09-3673, 2009 WL 2160984, at *3 (E.D. La. July 14, 2009). Again, however, the deponents have not objected or complained that the time to respond is unreasonable. R. Doc. 48, p. 5. Given the Court will reject this procedural argument at this time.

Fourth, the Defendants argue that the subpoena should be quashed because under Federal Rules of Evidence settlement agreements are privileged under Louisiana Law and the request is overbroad. R. Doc. 45-2, p. 4. In response, the Ingersolls argue that while communications made during the actual mediation might be privileged under Louisiana law; other documents made in connection with the settlement agreement are not privileged under Louisiana law. R. Doc. 48. Moreover, the Ingersoll argues that the Louisiana law also makes the settlement agreement otherwise discoverable under the exceptions to the statute. *Id.*

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Under Louisiana Law, "all oral and written communications and records made during mediation, whether or not conducted under this Chapter and whether before or after the institution of formal judicial proceedings, are not subject to disclosure, and may not be used as evidence in any judicial or administrative proceeding." La. Rev. Stat. 9:4112(A). However, the scope of the privilege under the Louisiana law is subject to the following exceptions:

> The confidentiality provisions of this Section do not extend to statements, materials and other tangible evidence, or communications that are otherwise subject to discovery or are otherwise admissible, merely because they were presented in the course of mediation, if they are based on proof independent of any communication or record made in mediation.
>
> If this Section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order or whether the communications or materials are subject to disclosure.

La. Rev. Stat. 9:411(C)-(D). Additionally, there is some ambiguity that the scope extends beyond communications made during the actual mediation itself. *See Broussard v. Brown's Furniture of Louisiana*, 128 So.3d 640, 641 (La. App. 3d Cir. 2013) (finding that actual mediation agreement

8

not privileged because "[t]he receipt and release was executed after the mediation, so the statute does not even arguably apply."); *see also* Lara E. White, *How Confidential is Your Mediation?*, 64 La. B.J. 198, 199 (2016).

While not generally discoverable, courts have allowed discovery of settlement agreements for purposes of accessing relevant information. *See Cleveland Constr. Inc. v. Whitehouse Hotel Ltd. P'ship*, No. 01-1666, 2004 WL 385052 at *1 (E.D. La. Feb. 25, 2004) ("Settlement agreements, although inadmissible in evidence for some purposes, are both discoverable and admissible for other purposes."); *Kiln Underwriting LTD v. Jesuit High School of New Orleans*, No. 06-4350, 2008 WL 4190991, at *7-8 (E.D. La. Aug. 27, 2008) (Roby, M.J.) (quoting *McKnight v. Stein Mart, Inc.,* No. 95-0258, 1996 WL 481079, at *1 (E.D.La. Aug.22, 1996) ("While courts recognize that settlement agreements are inadmissible to prove liability under Fed. R. Evid. 408, courts also firmly adhere to the proposition that 'the public interest is better served by permitting discovery of facts ... despite the private agreements of litigants not to disclose such information.'").

Merely because the parties might have entered into a confidentiality provision concerning the settlement does not foreclose discovery. *See Kiln Underwriting LTD*, 2008 WL 4190991, at *7 (internal citation and quotation omitted) ("Although parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. [Parties] should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another."); *Cleveland Constr. Inc. v. Whitehouse Hotel Ltd. P'ship*, 2004 WL 385052 at *1 (internal quotation and citation omitted) ("litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal").

Moreover, other non-privileged emails and other documents connected to a settlement agreement may also be discoverable. *See AMA Discount, Inc. v. Seneca Specialty Insurance Co.*, No. 15-2845, 2016 WL 3186493 at *2 (E.D. La. June 8, 2016); *see also Collins v. Coastline Constr. Inc.*, No. 92-16, 1992 WL 125328, at *3 (E.D. La. May 25, 1992) (Sears, J.).

In *Kiln Underwriting LTD*, the Court faced a similar situation. *Kiln Underwriting LTD*, 2008 WL 4190991, at *7-8. There, the Plaintiff sought information related to a settlement agreement between the Defendant and a third party. The Court in *Kiln* determined that the agreement may have led to relevant information and allowed the discovery of the agreement itself. *Id.* at *8. ("[T]he settlement may illustrate whether Jesuit settled any rights at issue in this litigation because of its compromise with the Waldorf brokers. . .[t]he Court concludes that the settlement agreement is discoverable, however, the Court makes no ruling as to its admissibility."). Similarly in *Koch Industries, Inc. v. Columbia Gas Transmission Corp.,* No. 89-2156, 1990 WL 72789 (E.D. La. May 29, 1990) in Court allowed the discovery of a settlement agreement between the Plaintiff and other third parties because "[g]iven the broad scope of discovery and the likelihood that the settlements will provide some relevant information or lead to admissible evidence regarding the affirmative defenses raised by Columbia, Columbia is entitled to these documents."

Given that the settlement agreement and the surrounding documents/discussions may be discoverable, in looking at the Louisiana law privilege, it appears that the privilege would "conflict[] with other legal requirements for disclosure of communications or materials" as contemplated under the exception to the privilege. La. Rev. Stat. 9:4112(D). As such—and as both parties conceded the Court may do (R. Doc. 45-2, p. 8; R. Doc. 38, p. 11-12)—the Court may determine "in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order or whether the communications or

materials are subject to disclosure." *Id.* As such, during oral argument, the Court had the subpoenaed party produce those documents which were responsive to the subpoena request.

Here, the Ingersolls submit that the settlement is relevant because not only would the agreement potentially demonstrate the bias or prejudice but also because the communications may demonstrate that the Ryder Defendants used the mediation/settlement agreement to manufacture a right to removal. R. Doc. 48, p. 9-10. To this extent, the Court agrees that any document or information that goes towards showing that the Ryder Defendants utilized the settlement to either compensate or entice the Mendozas to give up their claims against the Ingersolls and thereby potentially create the grounds for again removing the suit.

After reviewing the documents themselves, the Court has found that only one document is relevant to the Ingersolls' request. In particular, the document—which appears to be a handwritten settlement agreement drafted before the confection of a final release agreement—states that as part of the agreement "the judgment of dismissal shall be of the entire lawsuit." More curiously, the document also has scratched out portions wherein the Mendozas originally attempted to reserve their rights against all other defendants as well as where the Mendozas also attempted to disavow their attempt to assert any claims the Ingersolls. While the Court is not in a position to call this a full blown "fire," the Court believes there is enough "smoke" to possibly lend credence to the Ingersolls' argument, at least to the extent that the document is clearly relevant.

As discussed during oral argument, the Court will order the release of the document after the entering of a Protective Order signed by all parties, including the Mendozas, which will govern the documents use. Once entered onto the record, the Mendozas' attorney shall immediately release the document to the Ingersolls.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that the **Motion to Quash and Motion for Protective Order (R. Doc. 45)** is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent that the Mendozas' attorney must comply with the subpoena and produce the handwritten settlement agreement after the entering of a Protective Order in this case.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** as to all other documents in connection with the settlement agreement.

**IT IS FURTHER ORDERED** that the Parties must submit to the Court's email (efile-Roby@laed.uscourts.gov) a Protective Order signed by all Parties as well as the Mendozas to govern the use of this document **no later than close of business Wednesday, February 22, 2017.**

**IT IS FURTHER ORDERED** that the Parties are to collect the documents provided to the Court for *in camera* inspection **no later than Wednesday, February 22, 2017.**

New Orleans, Louisiana, this 15th day of February 2017.

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

**CLERK TO NOTIFY:
Monica C. Sanchez
Mitchell Sanchez, LLC
3445 N. Causeway Blvd.
Suite 902
Metairie, LA 70002
504-832-3120
Fax: 504-832-3155
Email: msanchez@mitchellsanchez.com**